UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TONY PENWELL, | CASE NO. C12-2271JR |
| Plaintiff, | ORDER ADOPTING REPORT AND RECOMMENDATION |
| v. | |
| REED HOLTGEERTS, et al., | |
| Defendants. | |

## I.   INTRODUCTION

This matter comes before the court on the Report and Recommendation of United States Magistrate Judge James P. Donohue (R&R (Dkt. # 21)) and Plaintiff Tony Penwell's objections thereto (Obj. (Dkt. # 22)).  Having carefully reviewed the foregoing, Defendants' response, the balance of the record, and the governing law, the court ADOPTS the Report and Recommendation (Dkt. # 21) and DISMISSES Mr. Penwell's complaint with prejudice.

ORDER- 1

## II.     BACKGROUND

Mr. Penwell is proceeding *in forma pauperis* under 42 U.S.C. § 1983. (*See* Dkt. # 7.) Mr. Penwell is currently confined at the Monroe Correctional Complex ("MCC"), which is operated by the Washington State Department of Corrections ("DOC"). (Dkt. # 6 at 4.) Mr. Penwell's complaint alleges that he was required by jail staff to remove his wedding rings and hair ties during a temporary stay at the King County Jail for a re-sentencing hearing. (Compl. (Dkt. # 8) at 3, ¶¶ 1-4.) Mr. Penwell complied with the order but protested that the items were allowed at other DOC facilities and that removing his rings was a violation of his religious practice. (*Id.*) Mr. Penwell was given a property receipt for the items but when he was subsequently transported back to MCC the items remained at King County Jail. (*Id.* ¶ 5.) Mr. Penwell wrote several letters to Defendant Reed Holtgeerts, the former Director of the King County Department of Adult and Juvenile Detention ("DAJD"), to complain about the missing items. (*Id.* ¶ 6.) Unbeknownst to Mr. Penwell, Director Holtgeerts had retired several years earlier, and consequently, Mr. Penwell's letters went unanswered. (*See* Holtgeerts Decl. (Dkt. # 16-3) ¶ 3-5.) After receiving no response, Mr. Penwell filed a tort claim with the King County Department of Risk Management ("DRM"). (*Id.* ¶ 7.) Mr. Penwell was subsequently contacted by Defendant Colin Wilson, a Tort Claims Investigator at DRM, regarding the claim. (*Id.* ¶ 8.) Mr. Wilson offered to release the items to a third person of Mr. Penwell's choosing. (*Id.*) Mr. Penwell, however, declined and insisted instead that the items be sent directly to his current DOC facility. (*Id.*) It was not until March 13, 2013, approximately 180 days after the items were originally taken from Mr. Penwell,

that he received his missing wedding rings and hair ties. (*See id.* ¶ 9; Chadderdon Decl. (Dkt. # 16-4) ¶ 3; Bechler Decl. (Dkt. # 16-2) ¶ 4.)

In essence, Mr. Penwell alleges that Defendants have violated his constitutional rights under the First and Fourteenth Amendments of the United State Constitution by forcing him to remove his wedding rings and hair ties and failing to resolve his subsequent tort claim.[1] (Compl. ¶¶ 9-11.) Mr. Penwell seeks compensatory and punitive damages, costs, and other relief. (*Id.* at 4.) Defendants move for summary judgment of Mr. Penwell's claims against Director Holtgeerts because Director Holtgeerts was not employed by DAJD at the time of the alleged infringement. (Mot. (Dkt. # 16) at 5-6.) Defendants also move for summary judgment of Mr. Penwell's claims against Mr. Wilson because he owes no duty to Mr. Penwell. (*Id.*) Finally, Defendants move for summary judgment of Mr. Penwell's First and Fourteenth Amendment claims as they pertain to all of the Defendants because none of Defendants' conduct or policies violated Mr. Penwell's constitutional rights. (*Id.* at 6-8.)

Magistrate Judge Donohue recommends granting Defendants' motion for summary judgment and dismissing Mr. Penwell's claims with prejudice. (*See generally* R&R.) In his Report and Recommendation, Magistrate Judge Donohue held that since

---

[1] Specifically, Mr. Penwell asserts that DAJD Policy § 5.01.001, which requires inmates to "remove any items including, but not limited to, all jewelry, hair pieces or wigs," and § 5.05.005, which requires that property discovered after an inmate's transfer be "picked up by a person or persons of the inmate's choosing," infringes on his rights under the First and Fourteenth Amendments. (*See generally* Compl.) Mr. Penwell also alleges that his due process rights under the Fourteenth Amendment were violated when Defendants failed to adequately respond after being notified that his property had been unlawfully taken and retained. (*Id.*)

ORDER- 3

Director Holtgeerts retired from DAJD years before the incident, Mr. Penwell cannot show that Director Holtgeerts was personally involved in the deprivation of his civil rights. (*Id.* at 7-8.) Magistrate Judge Donohue also held that Mr. Penwell's Fourteenth Amendment due process claims should be dismissed because the state provides an adequate post-deprivation remedy, which Mr. Penwell had failed to exhaust prior to filing this suit. (*Id.* at 10.) Further, Mr. Penwell has failed to allege any factors suggesting that Defendants' conduct amounted to purposeful or intentional deprivation of property, which is also requisite for a due process claim. (*Id.*) Next, Magistrate Judge Donohue held that Mr. Penwell's free exercise claims under the First Amendment should be dismissed because Defendants' alleged conduct and policies reasonably relate to "legitimate penological interests" as set forth in *Turner v. Safley*, 482 U.S. 78, 89-91 (1987), and are therefore valid despite impinging Mr. Penwell's sincerely held religious beliefs. (R&R at 11-16.) Finally, Magistrate Judge Donohue ruled that Mr. Penwell cannot prevail on his equal protection claim because he has failed to allege any facts showing that Defendants' conduct was intentionally discriminatory. (*Id.* at 18.)

### III. ANALYSIS

#### A. Legal Standards

"The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). The court reviews de novo those portions of the report and recommendation to which specific written objection is made.

*United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).  "The statute makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise." *Id.*  When no objections are filed, the court need not review de novo the report and recommendation. *Wang v. Masaitis*, 416 F.3d 992, 1000 n.13 (9th Cir. 2005).  Because Mr. Penwell is proceeding *pro se*, this court must interpret his complaint and objections liberally.  *See Bernhardt v. L.A. Cnty.*, 339 F.3d 920, 925 (9th Cir. 2003).

### B. Mr. Penwell's Objections

Mr. Penwell raises three objections to Judge Donohue's Report and Recommendation.  (*See* Obj.)  First, Mr. Penwell asserts that Magistrate Judge Donohue erred in holding that he failed to avail himself of adequate post-deprivation remedies.  (*Id.* at 2-5.)  Specifically, Mr. Penwell argues that his civil rights claims are only against King County officials and agencies, and therefore he is only required to avail himself of the county's—not the state's—post-deprivation remedies (which he claims he has done).  (*Id.*)  Second, Mr. Penwell refutes Magistrate Judge Donohue's conclusion that he failed to allege purposeful or intentional deprivation of his property, and instead contends that the 180 day delay is itself factually sufficient to establish this element of his due process claims.  (*Id.* at 3, 5.)  Lastly, given his status as a *pro se* plaintiff and the lack of discovery he was afforded to ascertain the identities of the proper defendants, Mr. Penwell contends that he should be allowed leave to amend his complaint to include the current Director of DAJD.  (*Id.* at 1-2, 4.)

1       Under a liberal interpretation, Mr. Penwell's objections only pertain to Magistrate

2 Judge Donohue's recommendations concerning Mr. Penwell's due process claims.  (*See*

3 *id.*)  Mr. Penwell does not object to Magistrate Judge Donohue's conclusion that the

4 Defendants' alleged violation of Mr. Penwell's First Amendment rights are justified by a

5 legitimate penological interest.  (*See id.*)  Further, Mr. Penwell does not object to

6 Magistrate Judge Donohue's conclusion that he has failed to plead discriminatory intent

7 as it pertains to his equal protection claims.  (*See id.*)  Finally, Mr. Penwell's objections

8 to Magistrate Judge Donohue's refusal to grant leave to amend only pertain to the

9 potential inclusion of the current Director of the DAJD and not any other aspect of the

10 Report and Recommendation.  (*See id.*)  Consequently, the court will review *de novo*

11 only those portions of Magistrate Judge Donohue's Report and Recommendation that

12 deal with Mr. Penwell's due process claims.  *See Reyna-Tapia*, 328 F.3d at 1121.

13       First, Mr. Penwell's argues that since all of his due process claims are against

14 King County officials and entities, his attempts to resolve his claims via the county's tort

15 claim procedures was sufficient to exhaust the post-deprivation remedy requirement.

16 However, Mr. Penwell's attempt to circumvent the adequate post-deprivation remedy

17 requirement by distinguishing between county and state remedies is unavailing.  As

18 Magistrate Judge Donohue noted, the Washington Tort Claims Act "allows the state,

19 while acting in its governmental or proprietary capacity, to be 'liable for damages arising

20 out of its tortuous conduct.'"  (R&R at 10 (quoting RCW 4.92.090).)  Notwithstanding

21 Mr. Penwell's misconceptions, this waiver of sovereign immunity applies to political

22 subdivisions of the state, such as counties.  *See Paulson v. Pierce Cnty.*, 664 P.2d 1202,

1205 (Wash. 1983) (en banc); *see also* RCW 4.96.010.  Furthermore, federal courts must rigorously enforce the "total exhaustion rule" and require "state prisoners to seek full relief first from the state courts."  *Rose v. Lundy*, 455 U.S. 509, 518 (1982).  Since the availability of a state tort action in Washington provides an adequate post-deprivation remedy for inmates, Mr. Penwell cannot maintain his federal due process claims until he has exhausted all available relief in state court.  *See Wright v. Riveland*, 219 F.3d 905, 918 (9th Cir. 2000).

      Even if Mr. Penwell had exhausted his state post-deprivation remedies, his due process claims are nevertheless legally insufficient.  In his complaint, Mr. Penwell accuses Defendants of ignoring their responsibilities to resolve his claim once notified.  (Compl. ¶ 11.)  Mr. Penwell contends that this allegation "rose to the level of purposeful or intentional deprivation of [his] property when more than 180 days elapsed" before the taken item were returned to him.  (Obj. at 5.)  However, Mr. Penwell's position is contradicted by the uncontested facts.  First, Mr. Penwell's letters to Director Holtgeerts went unanswered not because the Defendants were intentionally ignoring Mr. Penwell's complaints but because Director Holtgeerts had retired several years earlier.  (*See* Holtgeerts Decl.)  Next, Mr. Wilson, the Tort Claims Adjuster at Risk Management, did attempt to resolve Mr. Penwell's claim by offering to release the property to a third party of his choosing—a solution Mr. Penwell rejected.  (Compl. ¶¶ 7-8.)

      At worst, Defendants were negligent in failing to resolve Mr. Penwell's claims in a more timely fashion.  Nevertheless, the actions of jail staff in "mislaying an inmate's property, are quite remote from" the deliberate decisions of government officials to

deprive a person of life, liberty, or property. *Daniels v. Williams*, 474 U.S. 327, 331-332 (1986). Accordingly, Mr. Penwell cannot allege sufficient facts suggesting any of Defendants' conduct rose to the level of purposeful or intentional deprivation of his property. *See Davidson v. Cannon*, 474 U.S. 344, 347 (1986).

Finally, because Mr. Penwell cannot posit any viable section 1983 claims in this action, his request for leave to amend his Complaint to include the current Director of DAJD is pointless. Additionally, since Mr. Penwell cannot bring his federal due process claims until he has exhausted all state post-deprivation remedies, "it is obvious that [Mr. Penwell] cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *See Lopez v. Smith*, 203 F.3d 1122, 1128 (9th Cir. 2000) (quoting *Perkins v. Kansas Dept. of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999) (internal quotation marks omitted).

## IV. CONCLUSION

For the foregoing reasons, the court hereby ORDERS as follows:

(1) The court ADOPTS the Report and Recommendation (Dkt. # 21) in its entirety;

(2) The court GRANTS Defendants' motion for summary judgment (Dkt. # 16);

(3) The court DISMISSES Mr. Penwell's complaint (Dkt. # 8) with prejudice; and

//

(4) The court DIRECTS the Clerk to send copies of this order to Mr. Penwell, to counsel for respondent, and to Magistrate Judge Donohue.

Dated this 16th day of September, 2013.

JAMES L. ROBART
United States District Judge

ORDER- 9